Rita Mae **NALETTE,** Plaintiff,

v.

**UNITED STATES,** Defendant.

No. 06–355C.

United States Court of Federal Claims.

July 26, 2006.

Rita Mae Nalette, Seattle, WA, pro se.

Tara Kathleen Hogan, U.S. Department of Justice, Washington, DC, for Defendant.

## ORDER

HORN, Judge.

Before the court is plaintiff's *pro se* complaint alleging violations of "Oath of Office" by the President of the United States, Vice President of the United States, Senators and members of the House of Representatives, and "asking for judgment against the United States of America in the amount of $1.00." The defendant has filed a motion to dismiss arguing that this court lacks jurisdiction to review the plaintiff's complaint. The plaintiff has filed a response which cites to the takings clause of the Fifth Amendment to the United States Constitutions, but also states that: "The United States *are* not being sued. This is a philosophical suit brought by a heartbroken Citizen who yet believes strongly in the power of a free people and its representative government." (emphasis in original). For the reasons discussed below, this court is without jurisdiction to address the plaintiff's claims. The court, therefore, **GRANTS** the defendant's motion to dismiss the plaintiff's complaint in its entirety.

The plaintiff's one page complaint alleges that "the President of the United States, the Vice President of the United States, the members of the Senate and the House of Representatives (this administration) have violated their Oath of Office which is to: 'defend the Constitution of the United States.'" To prove the violation, the plaintiff relies upon the preamble of the United States Constitution: "We the people of the United States, in order to form a more perfect union, establish justice, insure domestic tranquility, provide for the common defense, promote the general welfare, and secure the blessings of liberty to ourselves and our posterity, do ordain and establish this Constitution for the United States of America." U.S. CONST. pmbl.

## DISCUSSION

The court recognizes that the plaintiff is proceeding *pro se*. Normally, pro se plaintiffs are entitled to liberal construction of their pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), *reh'g denied*, 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972); *see also Hughes v. Rowe*, 449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied*, 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977). The United States Court of Appeals for the Federal Circuit has similarly stated that "the pleadings of *pro se* litigants should be held to a lesser standard than those drafted by lawyers when determining whether the complaint should be dismissed for failure to state a claim because '[a]n unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims.'" *Forshey v. Principi*, 284 F.3d 1335, 1357 (Fed.Cir.2002) (quoting *Hughes v. Rowe*, 449 U.S. at 15, 101 S.Ct. 173), *cert. denied*, 537 U.S. 823, 123 S.Ct. 110, 154 L.Ed.2d 33 (2002). However, "there is no 'duty [on the part] of the trial court ... to create a claim which appellant has not spelled out in his pleading....'" *Scogin v. United States*, 33 Fed.Cl. 285, 293 (1995) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir.1975)) (alterations in original). "'A complaint that is ... confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation....'" *Scogin v. United States*, 33 Fed.Cl. at 293 (quoting *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775–76 (7th Cir.1994)) (alterations in

original and citations omitted); *see also Merritt v. United States*, 267 U.S. 338, 341, 45 S.Ct. 278, 69 L.Ed. 643 (1925) ("The petition may not be so general as to leave the defendant in doubt as to what must be met.") (citations omitted). "This latitude, however, does not relieve a *pro se* plaintiff from meeting jurisdictional requirements." *Bernard v. United States*, 59 Fed.Cl. 497, 499, *aff'd*, 98 Fed.Appx. 860, (Fed.Cir.2004), *reh'g denied* (2004).

Furthermore, subject matter jurisdiction may be challenged at any time by the parties, by the court *sua sponte*, and even on appeal. *See Fanning, Phillips, Molnar v. West*, 160 F.3d 717, 720 (Fed.Cir.1998) (quoting *Booth v. United States*, 990 F.2d 617, 620 (Fed.Cir.), *reh'g denied* (1993)); *United States v. Newport News Shipbuilding and Dry Dock Co.*, 933 F.2d 996, 998 n. 1 (Fed. Cir.1991). "In fact, a court has a duty to inquire into its jurisdiction to hear and decide a case." *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1342 (Fed.Cir.2001) (citing *Johannsen v. Pay Less Drug Stores N.W., Inc.*, 918 F.2d 160, 161 (Fed.Cir.1990)); *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 115 F.3d 962, 963 (Fed.Cir.1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). A plaintiff must establish jurisdiction by a preponderance of the evidence. *See Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988); *Thomas v. United States*, 56 Fed.Cl. 112, 115 (2003); *Martinez v. United States*, 48 Fed.Cl. 851, 857 (2001), *aff'd in part*, 281 F.3d 1376 (Fed.Cir.), *reh'g denied* (2002); *Bowen v. United States*, 49 Fed.Cl. 673, 675 (2001), *aff'd*, 292 F.3d 1383 (Fed.Cir.2002); *Vanalco, Inc. v. United States*, 48 Fed.Cl. 68, 73 (2000); *Alaska v. United States*, 32 Fed.Cl. 689, 695 (1995), *appeal dismissed*, 86 F.3d 1178 (Fed.Cir. 1996) (table).

Pursuant to RCFC 8(a)(1) and Rule 8(a)(1) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." RCFC 8(a)(1). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir.), *reh'g denied* (1997) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). Nevertheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed.Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

■ In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. 28 U.S.C. § 1491 (2000). The Tucker Act states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114, *reh'g denied*, 425 U.S. 957, 96 S.Ct. 1736, 48 L.Ed.2d 202 (1976) (citing *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 605–06, 372 F.2d 1002, 1009 (1967)); *see also Palmer v. United States*, 168 F.3d 1310, 1314 (Fed.Cir.1999); *Stinson, Lyons & Bustamante, P.A. v. United States*, 33 Fed.Cl. 474, 478 (1995), *aff'd*, 79

F.3d 136 (Fed.Cir.1996). A waiver of traditional sovereign immunity cannot be implied but must be "unequivocally expressed." *INS v. St. Cyr,* 533 U.S. 289, 299 n. 10, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Ins. Co. of the West v. United States,* 243 F.3d 1367, 1372 (Fed.Cir.), *reh'g and reh'g en banc denied* (2001); *Saraco v. United States,* 61 F.3d 863, 864 (Fed.Cir.1995) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), *cert. denied,* 517 U.S. 1166, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims; " 'it does not create any substantive right enforceable against the United States for money damages.' " *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (quoting *United States v. Testan,* 424 U.S. at 398–99, 96 S.Ct. 948), *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *White Mountain Apache Tribe v. United States,* 249 F.3d 1364, 1372 (Fed.Cir.2001), *aff'd,* 537 U.S. 465, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *Cyprus Amax Coal Co. v. United States,* 205 F.3d 1369, 1373 (Fed.Cir.2000), *cert. denied,* 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); *New York Life Ins. Co. v. United States,* 118 F.3d 1553, 1555–56 (Fed.Cir. 1997), *cert. denied,* 523 U.S. 1094, 118 S.Ct. 1559, 140 L.Ed.2d 792 (1998); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) *(en banc), cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349. In order for a claim to be successful, the plaintiff "must also demonstrate that the source of law relied upon 'can fairly be interpreted as mandating compensation by the federal government for the damages sustained.' " *White Mountain Apache Tribe v. United States,* 249 F.3d at 1372 (quoting *United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)); *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948; *Tippett v. United States,* 185 F.3d 1250, 1254 (Fed.Cir.1999) ("[T]he plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.") (quoting *James v. Caldera,* 159 F.3d 573, 580 (Fed.Cir.1998), *reh'g denied* (1999)); *Doe v. United States,* 100 F.3d 1576, 1579 (Fed.Cir. 1996), *reh'g and reh'g en banc denied* (1997); *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. at 607, 372 F.2d at 1009.

This court may only render judgment for money when the violation of a constitutional provision, statute, or regulation independently mandates payment of money damages by the United States. *See Khan v. United States,* 201 F.3d 1375, 1377–78 (Fed. Cir.2000). For example, the First Amendment, standing alone, cannot be interpreted to require the payment of money for its alleged violation, and, therefore, does not provide an independent basis for jurisdiction in this court. *See United States v. Connolly,* 716 F.2d at 886–87; *see also Hamlet v. United States,* 63 F.3d 1097, 1107 (Fed.Cir.1995), *cert. denied,* 517 U.S. 1155, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1996); *Featheringill v. United States,* 217 Ct.Cl. 24, 33, 1978 WL 5755 (1978); *Rosano v. United States,* 9 Cl. Ct. 137, 142 (1985), *aff'd,* 800 F.2d 1126 (Fed. Cir.1986), *cert. denied,* 480 U.S. 907, 107 S.Ct. 1350, 94 L.Ed.2d 521 (1987). Nor does the Fourth Amendment provide a basis for jurisdiction in this court. *See Brown v. United States,* 105 F.3d 621, 623 (Fed.Cir. 1997) ("Because monetary damages are not available for a Fourth Amendment violation, the Court of Federal Claims does not have jurisdiction over a such a violation."), *reh'g denied* (1997). The same is true of allegations concerning violation of the Due Process clauses of the Fifth and Fourteenth Amendments and the Equal Protection clause of the Fourteenth Amendment, since nothing in those clauses can be read to mandate monetary compensation. *See LeBlanc v. United States,* 50 F.3d 1025, 1028 (Fed.Cir.1995); *see also Crocker v. United States,* 125 F.3d 1475, 1476 (Fed.Cir.1997); *Collins v. United States,* 67 F.3d 284, 288 (Fed.Cir.1995) (citing additional cases); *Mullenberg v. United States,* 857 F.2d 770, 773 (Fed.Cir.1988); *Murray v. United States,* 817 F.2d 1580,

1583 (Fed.Cir.1987); *Loeh v. United States,* 53 Fed.Cl. 2, 4 (2002), *aff'd,* 55 Fed.Appx. 937 (Fed.Cir.2003); *Smith v. United States,* 51 Fed.Cl. 36, 38 (2001), *aff'd,* 36 Fed.Appx. 444 (Fed.Cir.2002); *Milas v. United States,* 42 Fed.Cl. 704, 710 (1999), *aff'd,* 217 F.3d 854 (Fed.Cir.1999).

■ The plaintiff's complaint is difficult to follow, however, the gravamen of her claim appears to be that various government officials, including the President and Vice President of the United States, and elected members of the House and Senate, have breached their oaths of office and violated their duties under the United States Constitution. The plaintiff's allegation that these officials breached their oath of office sounds in tort. It is well established that the Court of Federal Claims lacks jurisdiction over cases sounding in tort. The modern Tucker Act limits the Court of Federal Claims' jurisdiction to "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(2) (2000). Courts which have inquired into the scope of the Tucker Act's jurisdictional grant have concluded that section 1491 does not grant jurisdiction over tort claims to the Court of Federal Claims. *See New Am. Shipbuilders v. United States,* 871 F.2d 1077, 1079 (Fed.Cir.1989) ("If the government misconduct alleged was tortious, jurisdiction is not granted the Claims Court under the Tucker Act...."); *Tree Farm Dev. Corp. v. United States,* 218 Ct.Cl. 308, 316, 585 F.2d 493, 498 (1978) (noting that the Court of Claims "specifically lacks jurisdiction in cases sounding in tort" under the Tucker Act); *Whyte v. United States,* 59 Fed.Cl. 493, 497 (2004) (stating that the Tucker Act does not grant the court jurisdiction over independent tort claims); *Cottrell v. United States,* 42 Fed.Cl. 144, 148 (1998) ("The Tucker Act limits the court's jurisdiction to non-tort money suits against the United States ...."); *see also Keene Corp. v. United States,* 508 U.S. 200, 214, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) ("[T]ort actions brought in other courts were beyond the jurisdiction of the Court of Claims, just as tort cases are outside the jurisdiction of the Court of Federal Claims today."); *Brown v. United States* 105 F.3d 621, 623 (Fed.Cir. 1997) ("The Court of Federal Claims ... lacks jurisdiction over tort actions against the United States."); *LeBlanc v. United States,* 50 F.3d 1025, 1030 (Fed.Cir.1995) (noting that claims against the government for illegal interference with a lawsuit are "tort claims, over which the Court of Federal Claims has no jurisdiction"); *Shearin v. United States,* 992 F.2d 1195, 1197 (Fed.Cir. 1993) ("It is well settled that the United States Court of Federal Claims lacks—and its predecessor the United States Claims Court lacked—jurisdiction to entertain tort claims."). The United States Supreme Court recognized as early as 1868 that Congress did not intend to confer on the Court of Claims jurisdiction over tort actions against the government: "The language of the statutes which confer jurisdiction upon the Court of Claims, excludes by the strongest implication demands against the government founded on torts." *Gibbons v. United States,* 8 Wall. 269, 75 U.S. 269, 275, 19 L.Ed. 453 (1868). Finally, "[j]urisdiction to hear tort claims is exclusively granted to the United States District Courts under the Federal Tort Claims Act." *McCauley v. United States,* 38 Fed.Cl. 250, 264 (1997), *aff'd,* 152 F.3d 948 (Fed.Cir.1998); *see also* 28 U.S.C. § 1346(b) (2000); *Wood v. United States,* 961 F.2d 195, 197 (Fed.Cir.1992) ("[D]istrict courts have ... exclusive jurisdiction over tort claims for any amount if they fall within the Federal Tort Claims Act, [28 U.S.C.] § 1346(b)."); *Martinez v. United States,* 26 Cl.Ct. 1471, 1476 (1992) ("The district courts have exclusive jurisdiction in [Federal Tort Claims Act] actions."), *aff'd,* 11 F.3d 1069 (Fed.Cir.1993). Because negligent conduct and breach of an oath office are claims sounding in tort, the claims included in Ms. Nalette's complaint currently before this court are outside this court's jurisdiction.

■ Among the plaintiff's other broad claims is one alleging a taking under the Fifth Amendment to the United States Constitution. Specifically, Ms. Nalette's allegations include the following:

The President, Vice President, Senators, and Representatives have failed to secure our borders against illegal entry by foreign nationals, defied the will of the people with regard to the issue of amnesty, failed to enforce immigration laws, violated treaties with Native Americans, exported American technology needed to secure our safety, provided large tax breaks to oil companies and allowing them to extract oil from public lands without paying any royalty while failing to protect American citizens against unreasonable gas prices, signed foreign trade agreements that have cost us American jobs and exposed America to terrorist activities, and permitted a trade deficit that will bankrupt our future.

The defendant correctly responds that the plaintiff has failed to allege any property interest, whatsoever. *See American Pelagic Fishing Co., L.P. v. United States*, 379 F.3d 1363, 1372 (Fed.Cir.2004) ("[A]s a threshold matter, the court must determine whether the claimant has established a property interest for purposes of the Fifth Amendment."), *reh'g en banc denied* (2004), *cert. denied*, — U.S. —, 125 S.Ct. 2963, 162 L.Ed.2d 887 (2005). Plaintiff has, therefore, failed to state a takings claim over which this court can exercise jurisdiction.

Furthermore, although the plaintiff attempts to base her claims upon the United States Constitution, the plaintiff has cited only to the Constitution and has failed to cite to any money mandating provision or statute as required to maintain jurisdiction in this court. As the United States Court of Appeals for the Federal Circuit has stated: "When a complaint is filed alleging a Tucker Act claim based on a Constitutional provision, statute, or regulation, see 28 U.S.C. § 1491(a)(1), the trial court at the outset shall determine, either in response to a motion by the Government or *sua sponte* (the court is always responsible for its own jurisdiction), whether the Constitutional provision, statute, or regulation is one that is money-mandating." *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed.Cir.2005). "[T]he absence of a money-mandating source [is] fatal to the court's jurisdiction under the Tucker Act." *Id.; see also Khan v. United States*, 201 F.3d at 1377–78; *Crocker v. United States*, 125 F.3d at 1476; *LeBlanc v. United States*, 50 F.3d at 1028. For these reasons, the plaintiff's complaint must be dismissed.

In her response to the defendant's motion to dismiss, as cited above, the plaintiff states that: "This is a philosophical suit brought by a heartbroken Citizen who yet believes strongly in the power of a free people and its representative government." She further states that the $1.00 of relief requested "is physical recognition of a constitutionally represented free people." This court was not established to address requests for declaratory relief, represented by plaintiffs seeking insignificant amounts, through "philosophical" suits. The receipt and processing of Ms. Nalette's inappropriate filings taxes this court's resources as well as the resources of the Department of Justice and, therefore, the treasury, to which all taxpayers contribute. As such, the judicial process is abused and other litigants who properly have claims before this court are affected adversely. Based upon the plaintiff's grounds for filing her complaint, "[t]he unescapable conclusion is that [petitioner] [here Ms. Nalette] is engaged on this appeal in 'recreational' litigation, misusing precious and limited resources better spent on claims of h[er] fellow citizens to whom those resources belong. The present appeal is frivolous." *Bergman v. Dep't of Comm.*, 3 F.3d 432, 435 (Fed.Cir.1993) (quoting *Beachboard v. United States*, 727 F.2d 1092, 1095 (Fed. Cir.1984)), *cert. denied*, 510 U.S. 1115, 114 S.Ct. 1062 (1994); *see McEnery v. Merit Sys. Protection Bd.*, 963 F.2d 1512, 1516 (Fed.Cir.1992) (complaints "which have no hope of succeeding place an unnecessary and intolerable burden on judicial resources."), *reh'g denied* (1992); *Asberry v. United States Postal Serv.*, 692 F.2d 1378, 1382 (Fed.Cir.1982) ("The filing of and proceeding with clearly frivolous appeals constitutes an unnecessary and unjustifiable burden on already overcrowded courts, diminishes the opportunity for careful, unpressured consideration of nonfrivolous appeals, and delays access to the courts of persons with truly deserving causes.").

The court reminds Ms. Nalette that litigation is serious business. "This and other federal courts are funded by the taxpayers of this country to adjudicate genuine disputes, not to function as playgrounds for would-be lawyers or provide an emotional release for frustrated litigants." *Constant v. United States,* 929 F.2d 654, 659 (Fed.Cir.), *cert. denied,* 501 U.S. 1206, 111 S.Ct. 2799, 115 L.Ed.2d 973 (1991). Further, "[w]here, as here, a party's argument flies in the teeth of the plain meaning of the statute and raises arguments with utterly no foundation in law or logic, and indeed is contradicted by clear statutory language, the judicial process is abused and the funds provided by Congress via the taxpayers to the Justice Department are wasted." *Abbs v. Principi,* 237 F.3d 1342, 1351 (Fed.Cir.2001).

Rule 11 of the Rules of the United States Court of Federal Claims (RCFC) grants this court the authority to impose sanctions on parties who file frivolous or baseless pleadings. Specifically, RCFC 11 requires that, by filing a complaint in this court, the plaintiff represents that "the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law...." Ms. Nalette admits that the purpose of her complaint is to bring a "philosophical suit." The plaintiff's purpose in filing such a complaint is frivolous and harassing. Accordingly, the court could impose monetary sanctions. However, RCFC 11 states that sanctions should be limited to what is "sufficient to deter repetition of such conduct or comparable conduct by others similarly situated," and permits the imposition of nonmonetary sanctions. The appropriate sanction in this case, therefore, is to bar plaintiff from filing any future complaints without an order of this court approving such a filing. *See Bergman v. Dep't of Comm.,* 3 F.3d at 435 (barring the filing of future appeals by plaintiff without judicial review and approval of the appeal after referral to a judge for screening); *Aldridge v. United States,* 67 Fed.Cl. 113, 124 (2005) ("Plaintiff is further ORDERED to cease filing any further action related to Plaintiff's eviction from the Property in the United States Court of Federal Claims. The Clerk of the Court is directed to accept no filing from Plaintiff, without an Order of the court approving the filing."); *Hornback v. United States,* 62 Fed.Cl. 1, 6 (2004) ("To prevent *abuse* of the *judicial process* by plaintiff," the court barred future filings by plaintiff "absent advance written permission by a judge of this court." (emphasis added)), *aff'd,* 405 F.3d 999 (Fed.Cir.), *reh'g en banc denied* (2005); *Anderson v. United States,* 46 Fed. Cl. 725, 731 (2000) ("The clerk of the court is further directed not to file any pleadings or documents of any kind, submitted by plaintiff in this court, without the advance written permission of a judge from this court."), *aff'd,* 4 Fed.Appx. 871 (Fed.Cir.), *cert. dismissed,* 533 U.S. 926, 121 S.Ct. 2577, 150 L.Ed.2d 713, *reconsideration denied,* 534 U.S. 809, 122 S.Ct. 29, 151 L.Ed.2d 8 (2001).

## CONCLUSION

For the foregoing reasons, this court is without jurisdiction to review the plaintiff's complaint. The plaintiff's complaint, therefore, is **DISMISSED,** with prejudice. The Clerk of the Court shall enter **JUDGMENT** consistent with this opinion and is directed to accept no future filing from the plaintiff without an order by a judge of this court approving the filing. The Clerk of the Court shall retain a copy of this order on file indefinitely and refer to it in the event any future filings are presented by Ms. Nalette. Costs to the defendant.

**IT IS SO ORDERED.**