NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2010-1047


ALLEGRA HEMPHILL,

Plaintiff-Appellant,

v.

KIMBERLY-CLARK CORPORATION,

Defendant-Appellee,

and

PROCTER & GAMBLE COMPANY,

Defendant-Appellee.


Allegra Hemphill, of Washington, DC, pro se.

Vicki Margolis, Kimberly-Clark Corporation, of Neenah, Wisconsin, for defendant-appellee Kimberly-Clark Corporation.  Of counsel on the brief was Rebecca G. Lombard, Venable LLP, of Washington, DC.  On the brief for defendant-appellee Procter & Gamble Company was Gregory A. Castanias, Jones Day, of Washington, DC.

Appealed from:  United States District Court for the District of Columbia

Judge Rosemary M. Collyer

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2010-1047

ALLEGRA HEMPHILL,

Plaintiff-Appellant,

v.

KIMBERLY-CLARK CORPORATION,

Defendant-Appellee,

and

PROCTER & GAMBLE COMPANY,

Defendant-Appellee.

Appeal from the United States District Court for the District of Columbia
in case no. 09-CV-0004, Judge Rosemary M. Collyer.

_____

DECIDED:  May 4, 2010

_____

Before MICHEL, <u>Chief Judge</u>, LOURIE, and BRYSON, <u>Circuit Judges</u>.

PER CURIAM.

DECISION

Allegra D. Hemphill appeals from an order issued by the United States District Court for the District of Columbia enjoining her from filing any new patent infringement lawsuits against Proctor & Gamble Company ("P&G") and Kimberly-Clark Corporation

("K-C") without prior leave of court. In view of Ms. Hemphill's history of bringing meritless and duplicative litigation against P&G and K-C, we hold that the trial court did not abuse its discretion by entering the order. We therefore affirm.

BACKGROUND

Ms. Hemphill is the named inventor on United States Patent No. 4,557,720 ("the '720 patent"), which claims a "vaginal swab" having a core member, an adsorbent layer, and an outer housing with an annular band. Ms. Hemphill has prosecuted a number of actions and appeals based on the '720 patent, none of which has been successful.

Ms. Hemphill first suit in March 1999 against Johnson & Johnson/McNeil-PPC, Inc., in the United States District Court for the District of Maryland ("Hemphill I"). In that action, she alleged that certain sanitary napkin products infringed claim 2 of the '720 patent. The Maryland court noted that, during prosecution, Ms. Hemphill had distinguished her invention over the prior art by stating that her vaginal swab had "an elongated structure . . . to be introduced into the vaginal cavity" and "d[id] not behave, operate, or function like a sanitary napkin." Hemphill v. McNeil-PPC, Inc., 134 F. Supp. 2d 719, 723, 726 (D. Md. 2001). The Maryland court thus construed the claim term "vaginal swab" to mean a device having "a size and structure for cleansing or applying medicine within the vaginal canal." Id. at 726. Based on its claim construction and Ms. Hemphill's disclaimers, the Maryland court held that the defendants were entitled to summary judgment of non-infringement. Id. at 729. Ms. Hemphill appealed, and this court affirmed. Ms. Hemphill then sought certiorari from the United States Supreme Court, which was denied.

Ms. Hemphill next filed an action against P&G and K-C in the Maryland district court in November 2002 ("Hemphill II"). In Hemphill II, Ms. Hemphill alleged that P&G's ALWAYS® products and K-C's KOTEX® and POISE® products infringed claim 1 of the '720 patent. Applying the same claim construction that it had applied in Hemphill I, the Maryland court again concluded that the defendants' accused sanitary napkin products did not constitute "vaginal swabs" as that term was used in the patent. Hemphill v. Procter & Gamble Co., 258 F. Supp. 2d 410, 416-18 (D. Md. 2003). The Maryland court granted summary judgment of non-infringement on that ground.

Ms. Hemphill appealed the decision in Hemphill II, and this court affirmed the Maryland court's judgment, upholding that court's application of the prior claim construction to the same claim terms. Ms. Hemphill's request for review by the Supreme Court was denied. Despite the resolution of that case against her, Ms. Hemphill filed a motion in the Maryland district court in June 2005 seeking entry of a "Final Judgment" in her favor. That motion was denied, and Ms. Hemphill unsuccessfully appealed to this court and sought certiorari from the Supreme Court.

In July 2007, Ms. Hemphill filed another action, this time in the United States District Court for the District of Columbia, accusing the ALWAYS®, KOTEX®, and POISE® products of infringing claim 2 of the '720 patent ("Hemphill III"). The D.C. district court granted the defendants' motion to dismiss the complaint on the ground of res judicata. Ms. Hemphill moved for reconsideration under Federal Rule of Civil Procedure 60(b), arguing that P&G and K-C had engaged in fraud during the course of the litigation. The D.C. district court rejected Ms. Hemphill's claims as "baseless accusations" and denied relief. Ms. Hemphill then filed an appeal with the United States

Court of Appeals for the D.C. Circuit, which transferred the case to this court. We summarily affirmed the district court's decision and denied Ms. Hemphill's subsequent request for reconsideration.

On January 2, 2009, Ms. Hemphill filed the present lawsuit against P&G and K-C in the D.C. district court, alleging "fraud upon the court" and "conspiracy" ("Hemphill IV"). Specifically, Ms. Hemphill alleged that P&G, K-C, and their attorneys had deceived the courts in prior cases by "claiming that the products Ms. Hemphill accuses of infringing her '720 patent were 'sanitary napkins' . . . [when] they knew or should have known that the personal hygiene products with brand names Always®, Kotex® and Poise® . . . are labeled as 'pads', 'maxi-pads', 'mini-pads' etc." She further alleged that the defendants had submitted false declarations and exhibits that deceived the courts regarding which products were accused of infringement. On March 31, 2009, the D.C. court dismissed the complaint based on res judicata, concluding that Ms. Hemphill "could have raised— and indeed did raise—the same accusations in Hemphill III" in her Rule 60(b) motion.

Notwithstanding the district court's warning that "[i]t is time for Ms. Hemphill to accept the judgments of the courts and to cease suing Defendants," Ms. Hemphill subsequently moved for reconsideration, or in the alternative to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). She again argued that the defendants had deceived the court and had "tampered with the evidence" pertaining to the accused products. The defendants requested that the district court impose sanctions against Ms. Hemphill, including a pre-filing injunction that would limit her right to file new patent infringement actions against them. The district court denied Ms.

Hemphill's Rule 59(e) motion on April 29, 2009, and ordered Ms. Hemphill to show cause why she should not be sanctioned for her conduct in the litigation.

After Ms. Hemphill again attempted to reassert her fraud arguments, the district court granted in part P&G and K-C's motion for sanctions under Federal Rule of Civil Procedure 11. The sanctions order, issued on June 1, 2009, enjoined Ms. Hemphill from filing any new patent infringement lawsuits against P&G or K-C without first obtaining leave of the D.C. district court. The court further required Ms. Hemphill to certify and explain how any new complaint raises matters not previously decided by any federal court. On June 29, 2009, Ms. Hemphill appealed the sanctions order to the D.C. Circuit, which transferred the appeal to this court.

## DISCUSSION

Although Ms. Hemphill attempts to reassert her fraud claims and by extension her earlier patent infringement claims, the only matter properly before this court is the district court's sanctions order, because Ms. Hemphill failed to take a timely appeal from the district court's dismissal of her complaint and the denial of her Rule 59(e) motion. Under 28 U.S.C. § 2107(a) and Federal Rule of Appellate Procedure 4(a), Ms. Hemphill had 30 days from the date of the order denying her Rule 59(e) motion (i.e., until May 29, 2009) to file an appeal on the merits of the dismissal order. However, she filed her notice of appeal on June 29, 2009, and she referenced only the district court's sanctions order in that notice. Because we lack jurisdiction to address Ms. Hemphill's arguments pertaining to the allegations of fraud and conspiracy, we confine our discussion to the sanctions order.

When reviewing the imposition of sanctions under Rule 11, this court applies the law of the regional circuit in which the district court sits. Q-Pharma, Inc. v. Andrew Jergens Co., 360 F.3d 1295, 1299 (Fed. Cir. 2004). Under D.C. Circuit law, the appellate court reviews a Rule 11 determination for an abuse of discretion. See Lucas v. Duncan, 574 F.3d 772, 775 (D.C. Cir. 2009). A court's decision to impose an anti-filing injunction is also reviewed for abuse of discretion. See SEC v. Banner Fund Int'l, 211 F.3d 602, 616 (D.C. Cir. 2000).

The D.C. Circuit's decision in In re Powell, 851 F.2d 427 (D.C. Cir. 1988), sets forth guidelines for anti-filing injunctions involving pro se litigants. The Powell court emphasized that an injunction is "an extreme remedy" and that, in fashioning appropriate injunctive relief, the court must "take great care not to unduly impair a litigant's constitutional right of access to the courts." Id. at 430-31. In particular, "the district court should endeavor to create an adequate record for review." Id. at 431. Moreover, a pro se litigant should be afforded an opportunity to oppose the entry of an anti-filing order before it is entered. Id. Finally, "it is incumbent upon the district court to make substantive findings as to the frivolous or harassing nature of the litigant's actions." Id. In so doing, the court should make findings "as to any pattern" of behavior, looking to "both the number and content of the filings as indicia of frivolousness and harassment." Id. We conclude that the D.C. district court did not abuse its discretion in imposing the sanction of an anti-filing injunction in this case.

First, the district court created a full record to support the injunction, reviewing hundreds of pages of largely repetitive filings by Ms. Hemphill and providing clear explanations for its rejection of each of Ms. Hemphill's claims. The district court's order

dismissing Ms. Hemphill's complaint chronicles the decade-long history of Ms. Hemphill's litigation of the '720 patent. The record also shows that the court considered, but declined to grant, an earlier motion to impose sanctions on Ms. Hemphill.

Second, the court gave Ms. Hemphill an opportunity to oppose the entry of sanctions against her. To be sure, rather than informing Ms. Hemphill that she might be restricted from filing future lawsuits, as suggested by Powell, the district court ordered Ms. Hemphill to show cause "why the Court should not sanction her by assessing a fine for bringing this duplicative lawsuit." Under the circumstances, however, we conclude that the order's reference to monetary sanctions, rather than restrictions on filing, did not render it insufficient to support the final sanctions order. Significantly, Ms. Hemphill was placed on notice that she could be subjected to an anti-filing injunction, because P&G and K-C filed motions both in this case and in the earlier D.C. district court case requesting that the court impose such an order. In addition, in its pre-motion letter of February 25, 2009, P&G warned Ms. Hemphill of its intention to seek an anti-filing injunction. It is thus clear that Ms. Hemphill was put on notice of the possibility of an anti-filing injunction. Moreover, it seems highly unlikely that she would have responded any differently if the court had expressly referred to the requested anti-filing injunction in its order to show cause. In her response to the order to show cause, Ms. Hemphill did not address the specific proposed sanctions, but instead simply reasserted her fraud arguments, stating that "[t]he Court should not expect Ms. Hemphill to accept or be satisfied with the false product the defendants' [sic] provided in the original lawsuit." The district court cited that statement in its final sanctions order as a basis for its

conclusion that Ms. Hemphill would "continue pursuing her meritless infringement claims" unless the court took appropriate measures to prevent her from doing so. Thus, the district court's failure to include a specific reference to the possible imposition of an anti-filing injunction in its order to show cause, while perhaps error under Powell, was harmless.

Third, the district court made ample findings regarding the harassing and frivolous nature of Ms. Hemphill's actions, discussing both the number of her filings and their lack of merit. In its sanctions order, the court observed that, despite numerous warnings, Ms. Hemphill persisted in "embroil[ing] Defendants in never-ending baseless litigation." The court also reiterated its concern that "absent sanctions, Ms. Hemphill will continue to harass Defendants indefinitely irrespective of the judgments of the courts." Characterizing Ms. Hemphill's claims as meritless attempts to "circumvent the courts' judgments," the court noted the repeated rejection of Ms. Hemphill's patent infringement claims, as well as its own rejection, for the fourth time, of Ms. Hemphill's asserted distinction between "sanitary napkins" and "pads."

The court's findings are well supported by the record. Ms. Hemphill has engaged in a vexatious pattern of filing multiple duplicative lawsuits, forum-shopping among various district and appellate courts, and requesting reconsideration of every adverse ruling in every case. It is also apparent that her claims are without merit. Her infringement claims are baseless in light of the conclusions in Hemphill I (affirmed by this court) that Ms. Hemphill disclaimed coverage of sanitary napkin products during the prosecution of the '720 patent and that key terms common to both claims of the '720 patent must be construed to exclude sanitary napkin products.

There likewise appears to be no support for Ms. Hemphill's assertions of fraud. Ms. Hemphill continues to provide no basis for her distinction between "sanitary napkins" and "pads," nor does she present any evidence that her opponents' use of such terminology was deceptive or misleading to the courts. Ms. Hemphill also provides no support for her suggestion that the defendants' allegedly fraudulent exhibits, which depicted the ALWAYS®, KOTEX®, and POISE® products without their disposable outer wrappers, deceived the courts into believing that those accused products lacked such wrappers. In fact, the court in Hemphill II explicitly recognized that the accused products included disposable plastic wrappers but concluded that those wrappers did not satisfy the "outer housing" claim limitation in the '720 patent. See Hemphill, 258 F. Supp. 2d at 417.

Finally, the district court's injunction does not impose an excessive burden on Ms. Hemphill's filing rights. It is narrowly tailored to restrict only new patent infringement suits against P&G and K-C, and it allows Ms. Hemphill to litigate if she obtains permission from the court and certifies that the suit raises new, previously undecided issues. Moreover, the language of the injunction comports with that of other anti-filing injunctions upheld by the D.C. Circuit. See, e.g., Urban v. United Nations, 768 F.2d 1497 (D.C. Cir. 1985). We therefore conclude that the district court did not abuse its discretion when it entered an anti-filing injunction against Ms. Hemphill.